**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| DERRICK REED, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-4437 |
| | § | |
| BRADY TRUCKING, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

Derrick Reed sued his former employer, Brady Trucking, Inc., alleging that the company discriminated and retaliated against him because of his race. Reed alleges that he and other African-American truck drivers working as sand haulers for Brady Trucking had more dangerous working conditions and received inferior truck assignments than Caucasian drivers, and that he was terminated because he complained about this treatment. He asserts claims against Brady Trucking under 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a); and the Texas Commission on Human Rights Act, Tex. Labor Code § 21.05 *et seq.*, for racial discrimination and retaliation.

Brady Trucking has moved to dismiss Reed's amended complaint, asserting that this court lacks subject-matter jurisdiction over the Title VII and Texas Labor Code claims and that Reed has failed to state a claim on which relief can be granted. Reed replied, voluntarily dismissing his claims under the Texas Labor Code, but not otherwise amending. (Docket Entry No. 12, 13).

Based on the record; the motion and response; and the applicable law, the court grants Brady Trucking's motion to dismiss, without prejudice and with leave for Reed to amend by **May 3, 2019**.

1

The reasons are explained in detail below.

## I.     The Complaint's Allegations

Reed began working for Brady Trucking as a sand hauler in November 2017. (Docket Entry No. 6 at ¶ 10). Brady Trucking assigned trucks outfitted with sleeping spaces and appliances to its sand haulers and coordinated their driving schedules for the hauls. (*See id.* at ¶¶ 11–12).

Reed, who is African-American, alleges that he was assigned a truck that had a dirty mattress and was littered with "rotted food, dishes, cigarette butts, bottles of urine, dirt, and trash." (*Id.* at ¶ 11). His experience was similar to that of other African-American drivers, who also received "trucks that were inoperable, filthy, and without the promised appliances." (*Id.*). While African-American drivers drove what were called "coffin trucks" because of their "confined sleeping quarters," Caucasian drivers were given clean trucks with functional appliances and spacious sleeping berths. (*Id.*). Reed talked with his African-American coworkers about their working conditions and truck assignments. (*Id.* at ¶ 15).

Reed had some experiences that he alleges demonstrates that his Caucasian coworkers had safer working conditions than African-American drivers. (*Id.* at ¶ 12). On December 15, 2017, during a round-trip haul, Reed told his field coordinator, "Cowboy," that he could not make his haul because he was already 13 hours into his 14-hour driving shift and would run out of time. (*Id.*). In response, Cowboy adjusted Reed's logbook to indicate that Reed had spent several hours sleeping and still had 14 more hours to drive. (*Id.*). Reed discussed what Cowboy did the next day with another supervisor, Mouton, who told Reed that Cowboy's action was illegal. (*Id.* at ¶ 13). After this discussion, Cowboy stopped offering Reed hauling opportunities, and Reed did not get as many trips assigned to him. (*Id.*).

Later that same month, Reed had a flat tire on a haul trip. Another Brady Trucking employee, Stanley Friel, told him to continue driving to a truck stop to add air to the tire before returning to the company base. (*Id.*). Reed's prior experience when he had flat tires or tire problems while on a haul was that the company would send a professional tire-servicing vehicle to his truck to do the repair. (*Id.*). Reed states that the order to keep driving was "an out-of-service violation" of U.S. Department of Transportation regulations. He alleges that because the flat tire took three days to repair, not the usual few minutes, he missed other hauling opportunities. (*Id.*).

On January 16, 2018, Reed injured his back in a personal automobile accident. (*Id.* at ¶ 16). He informed Brady Trucking on January 29 that he had to seek medical care in Bayton and Houston. (*Id.*). Brady Trucking claimed that Reed quit on January 26 because of the accident and back injury. (*Id.* at ¶ 17). Reed alleges that he worked until January 29, and that Brady Trucking fired him on February 9 while he was seeking medical care for his back injury. (*Id.*). Reed alleges that his termination was both discriminatory and in retaliation for the complaints he made about the truck he was assigned and the orders from Cowboy, Mouton, and Friel, and that Brady Trucking used his injury as a pretext. (*Id.* at ¶ 18).

Reed sued Brady Trucking on November 21, 2018. (Docket Entry No. 1). Reed states that he filed a charge with the U.S. Equal Employment Opportunity Commission on December 3, 2018. (Docket Entry No. 6 at ¶ 7). His signature on the EEOC charge attached to his amended complaint is dated November 30, 2018. (Docket Entry No. 6-1). The EEOC charge states that Brady Trucking discriminated and retaliated against Reed based on his race. (Docket Entry No. 6 at ¶ 7). Reed received a Notice of Right to Sue on December 12, 2018. (*Id.* at ¶ 8). On December 17, Reed amended his complaint. (*See* Docket Entry No. 6). In the amended complaint, Reed alleges that

Brady Trucking intentionally discriminated against him because of his race and retaliated against him for making complaints about that discrimination, violating both Title VII and the Texas Commission on Human Rights Act. (*Id.* at ¶¶ 19–28). He alleges that Brady Trucking is liable for damages under 42 U.S.C. § 1981 because his employment conditions were worse than for non-African-American drivers. (*Id.* at ¶¶ 29–31). He seeks damages, including back and future wages and benefits, compensation for emotional distress and physical pain, as well as attorney's fees and court costs. (*Id.* at ¶ 33).

Brady Trucking has moved to dismiss, contending that Reed did not file his discrimination and retaliation claims with the Texas Workforce Commission and the EEOC within 300 days of the alleged discriminatory and retaliatory actions, depriving this court of jurisdiction over those claims. (Docket Entry No. 12 at 18). Brady Trucking also argues that the court should dismiss Reed's claims under Rule 12(b)(6) because he has failed to plead factual allegations sufficient to state a claim. (*Id.* at 30–31). Reed has responded, arguing that he timely filed his Title VII claims and that he has alleged sufficient facts to support all of his claims. (Docket Entry No. 13). Reed voluntarily dismissed his race discrimination and retaliation claims under the Texas Commission and Human Rights Act because those claims were not timely filed with the agency, but he has not otherwise amended. (*Id.* at 6).

The pleadings, the motion and response, and the applicable law are considered below.

## II.     The Legal Standard Under Rule 12(b)(6)

Rule 12(b)(6) requires dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8's requirement of "a short and plain statement of the claim showing that the pleader is entitled to

relief." FED. R. CIV. P. 8(a)(2). A complaint must contain "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

To withstand a Rule 12(b)(6) motion, a "complaint must allege 'more than labels and conclusions,'" and "a formulaic recitation of the elements of a cause of action will not do." *Norris v. Hearst Tr.*, 500 F.3d 454, 464 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration omitted) (quoting *Twombly*, 550 U.S. at 557). "[A] complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* (quotation and alteration omitted).

In considering a motion to dismiss for failure to state a claim, the court is to consider "the contents of the pleadings, including attachments." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d

496, 498 (5th Cir. 2000). Documents attached to a motion to dismiss "considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the] claim." *Id.* at 498–99 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). The court may also "take judicial notice of matters of public record." *Norris*, 500 F.3d at 461 n.9.

## III. Analysis

### A. Whether Reed's Claims Are Time Barred

Brady Trucking argues that this court lacks subject-matter jurisdiction over Reed's claims for racial discrimination and retaliation under Title VII and the Texas Commission on Human Rights Act because Reed did not timely file his discrimination charge with the relevant agencies. (Docket Entry No. 12 at 18). Reed has acknowledged that he did not timely file his claims under the Texas Commission on Human Rights Act, and he has voluntarily dismissed those claims. (Docket Entry No. 13 at 6). The court is left to consider whether Reed timely filed his charge for his Title VII claims.

"[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel and equitable tolling." *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 521 (5th Cir. 2008) (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)).[1] However, a

---

[1] Brady Trucking appears to collapse the standards for administrative exhaustion and limitations. The company's argument for dismissal rests on the theory that Reed did not file his charge with the EEOC within the 300-day limit Title VII requires. This is a limitations argument properly considered under Rule 12(b)(6). *See, e.g.*, *Muoneke v. Prairie View A&M Univ.*, No. H-15-2212, 2016 WL 3017157 (S.D. Tex. May 26, 2016). An argument based on administrative exhaustion examines whether the plaintiff's claims in litigation were also brought before the EEOC. *See id.* The Fifth Circuit construes an EEOC charge and asks what the agency was likely to investigate as a result. The test is what "can reasonably be expected to grow out of the charge of discrimination." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008)

plaintiff's failure to file a timely EEOC charge can bar Title VII claims. A plaintiff suing under Title VII must file a charge with the EEOC under 42 U.S.C. § 2000e-5(f)(1), which provides the deadline:

> A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place, and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.

42 U.S.C. § 2000e-5(e)(1). A discrimination claim not brought within the filing deadline is time-barred. *Mack v. John L. Wortham & Son, L.P.*, 541 F. App'x 348, 355 (5th Cir. 2013) (per curiam); *see also Huckabay v. Moore*, 142 F.3d 233, 238 (5th Cir. 1998) ("In a state that, like Texas, provides a state or local administrative mechanism to address complaints of employment discrimination, a Title VII plaintiff must file a charge of discrimination with the EEOC within 300 days after learning of the conduct alleged."), *overruled on other grounds by Heath v. Bd. of Supervisors for S. Univ.*, 850 F.3d 731, 737 (5th Cir. 2017).

A court asks two questions to determine if a plaintiff's charge was timely filed: what was the

---

(quotation marks omitted). Unlike Title VII limitations, the administrative-exhaustion requirement is jurisdictional. "[C]ourts have no jurisdiction to consider Title VII claims as to which the aggrieved party has not exhausted administrative remedies." *Simmons-Myers v. Caesars Entm't Corp.*, 515 F. App'x 269, 272 (5th Cir. 2013) (per curiam) (quoting *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 711 (5th Cir. 1994)). Because Brady Trucking does not argue that the claims Reed asserted in his amended complaint could not reasonably be expected to grow out of his EEOC charge, the court considers Brady Trucking's argument as based on limitations and analyzes it under Rule 12(b)(6).

alleged unlawful employment practice, and when did that practice occur? *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). The Supreme Court has "repeatedly interpreted the term 'practice' to apply to a discrete act or single 'occurrence,' even when it has a connection to other acts." *Id.* at 111. "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify," and each of these discriminatory or retaliatory incidents is "a separate actionable 'unlawful employment practice.'" *Id.* at 114. "A discrete retaliatory or discriminatory act 'occur[s]' on the day that it 'happen[s].'" *Id.* at 110. "[T]he limitations period begins on the date of the alleged unlawful employment action." *Phillips v. Leggett & Platt, Inc.*, 658 F.3d 452, 455 (5th Cir. 2011). "The proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts become the most painful." *Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980) (alteration and quotation marks omitted). Because Texas has its own administrative procedures, employees have 300 days from the date of an alleged discriminatory act to file an EEOC charge based on that act.

Reed attached to his amended complaint a charge of discrimination signed and dated November 30, 2018. (Docket Entry No. 6-1). He alleges that he filed this charge with the EEOC on December 3, 2018. (Docket Entry No. 6 at ¶ 7). The charge states that the earliest discriminatory act was on November 30, 2017, and the last was on August 31, 2018. (*Id.* at 2). The description of the discriminatory acts in the EEOC charge is nearly identical to the descriptions in Reed's amended complaint. The charge states that "[a]fter completion of [his] on boarding, [he] noticed that African American drivers were being assigned trucks that were inoperable, filthy, and without the promised appliances," while "Caucasian truck drivers were being given trucks that were fully detailed." (Docket Entry No. 6-1 at 2). The EEOC charge refers to his December 15 interaction with Cowboy;

the December 16 call with Mouton; the December 28 flat tire; the January 2018 accident, and the subsequent termination on February 9. (*Id.* at 2–3). Reed attached the Notice of Right to Sue from the EEOC dated December 12, 2018. (Docket Entry No. 6-2).

Based on Reed's amended complaint, the first alleged discriminatory acts occurred in November 2017, when Reed was first assigned a truck to drive and learned that it was dirty and inferior to the trucks assigned to Caucasian drivers. Other alleged discriminatory acts occurred on December 15 and 16, when Reed talked to Cowboy and Mouton; on December 28, when he talked to Friel; and on February 9, when he was fired. While Reed's EEOC charge states that the last act of discrimination occurred on August 31, 2018, Reed's amended complaint does not allege facts related to any employment actions after Brady Trucking fired him on February 9. (*See* Docket Entry No. 6 at ¶ 17). The deadline for filing a charge of retaliation or discrimination related to Reed's termination was December 6, 2018. (*Id.*).[2]

Reed's discrimination and retaliation claim related to his termination falls within the statutory period because—accepting Reed's statement that he filed his charge on December 3, 2018, as true—he filed his charge within the 300-day limit. If Reed's other claims are based on discrete discriminatory or retaliatory acts, they were not timely filed because Reed did not file his EEOC charge raising those claims before October 24, 2018, 300 days after the flat-tire incident.

"[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Morgan*, 536 U.S. at 113. An act that happened outside the filing period "may constitute relevant background evidence in a proceeding in which the status of

---

[2] Brady Trucking argues that the relevant period for Reed to file his charge was 180 days. It asserts that 180 days after the last discriminatory act Reed alleges was June 15, 2018, and 180 days from February 9, 2018 was August 8, 2018. (Docket Entry No. 12 at 18). Because Texas has state administrative mechanisms to address discrimination, the limit is 300 days.

the current practice is at issue, but separately considered, it is merely an unfortunate event history which has no present legal consequence." *United Air Lines, Inc. v. Evans*, 431 U.S. 533, 558 (1977). "[C]urrent effects alone cannot breathe life into prior, uncharged discrimination." *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 619 (2007).

However, a plaintiff can support a Title VII claim with conduct occurring more than 300 days before filing an EEOC charge if the plaintiff can allege facts that could show that "the pre- and post-limitations period incidents involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 120–21 (2002); *see Heath v. Bd. of Supervisors*, 850 F.3d 731, 736–39 5th Cir. 2017). "A charge alleging a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Morgan*, 536 U.S. at 122. There are three limits on the doctrine:

> (1) the plaintiff must demonstrate that the separate acts are related; (2) the violation must be continuing; intervening action by the employer, among other things, will sever the acts that preceded it from those subsequent to it; and (3) the doctrine may be tempered by the court's equitable powers, which must be exercised to "honor Title VII's remedial purpose without negating the particular purpose of the filing requirement."

*Heath*, 850 F.3d at 738 (citing *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009)). However, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charged." *Morgan*, 536 U.S. at 113. Discrete discriminatory acts include "termination, failure to promote, denial of transfer, or refusal to hire." *Morgan*, 536 U.S. at 114. The continuing-violation doctrine is usually "limited to hostile environment claims." *Lee v. City of Corpus Christi*, 749 F. Supp. 2d 521, 531 (S.D. Tex. 2010).

*Heath v. Board of Supervisors for Southern University*, 805 F.3d 731 (5th Cir. 2017), is instructive. The plaintiff, a university math professor, alleged that her supervisor "began a campaign of harassment" beginning in 2003 "that continued through the filing of [her] lawsuit a decade later" in 2013. *Id.* at 734. The plaintiff alleged that, from 2003 to 2013, her supervisor had interfered with her work by rewriting exams, denying her requests for sabbatical, excluding her from meetings, and, after her return from leave, refusing to allow her to participate in committees or to teach online classes. *Id.* at 735. The district court granted summary judgment to the university, concluding that "it could only consider the conduct occurring within 300 days of Heath's filing of a complaint with the EEOC." *Id.* at 734. The Fifth Circuit reversed, holding that the plaintiff had "alleged a continuing course of conduct" under the continuing-violation doctrine because the alleged "pre- and post-limitations period incidents involved the same type of employment actions, occurred frequently, and were perpetrated by the same managers." *Id.* at 740 (quoting *Morgan*, 536 U.S. at 120–21).

Reed argues that Brady Trucking's discriminatory acts were a continuing violation. He argues that his amended complaint alleges facts showing that Brady Trucking had a regular practice of discrimination, which culminated in his February 9, 2018, termination. (Docket Entry No. 13 at 7). Reed's assertion that the continuing-violation doctrine applies is largely devoid of detail. While he correctly states that he has the burden to invoke the doctrine and show that it applies, his explanation is limited to stating that this amended complaint alleges that Brady Trucking had a "'standard [discriminatory] operating procedure' and a 'regular rather than unusual practice' of discrimination." (Docket Entry No. 13 at 7). Neither his EEOC charge nor his amended complaint explicitly asserts a hostile-work environment claim.

Reed's complaint alleges these instances of discrimination: in December 2017, Reed saw that

African-American drivers received inferior trucks and equipment, he received an inferior truck, and he confirmed that this was true of other African-American drivers and not other drivers; Reed's interaction with Cowboy on December 15; Reed's phone call with Mouton on December 16; Reed's flat tire and Friel's order to keep driving on December 28; and Reed's termination on February 9, 2018. (Docket Entry No. 6 at ¶¶ 12, 14, 16). Besides the termination, which is clearly a discrete actionable event, the other incidents are less clearly classified as discrete events.

To successfully invoke the continuing-violation doctrine and sweep the pre-limitations and not clearly actionable events into his timely filed claim for the February 9 termination, Reed must allege facts showing a connection between these pre- and post-limitations discriminatory incidents. This requires alleging facts demonstrating not only that he "suffered race-base[d] harassment both prior [to] and during the filing period," *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343 (5th Cir. 2001), but also that the discriminatory acts were of the same type, occurred frequently, and were carried out by the same managers. *Heath*, 805 F.3d at 740.

Reed has not alleged facts showing that the termination was the same type of employment action as the pre-limitations actions. Unlike the plaintiff in *Heath*, Reed has not alleged facts showing that the same supervisors were involved in the February 9 firing as in the pre-limitations events. He has also not alleged that the same type of discrimination—inferior equipment, lack of response to service requests, more dangerous working conditions—continued into the post-limitations period.

Reed alleges that the termination—the post-limitations event—was a retaliatory employment action that resulted from his complaints, a protected activity, made about the pre-limitations events. (Docket Entry No. 6 at ¶ 18). A protected activity includes "opposition to any practice rendered

unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding or hearing under Title VII." *Richards v. JRK Property Holdings*, 405 F. App'x 829, 831 (5th Cir. 2010) (quoting *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (quotation marks omitted)). "[A]n employee cannot simply complain that []he received unfair or undesirable treatment." *Carter v. Target Corp.*, 541 F. App'x 413, 418 (5th Cir. 2013). For an internal complaint made to a company to be a protected activity, it must clearly oppose an unlawful Title VII practice. "A vague complaint that does not reference a discriminatory employment practice does not constitute a protected activity." *Id.* As discussed below, Reed's amended complaint does not allege he emphasized to Brady Trucking any racially discriminatory aspect of the treatment he and others received. While he alleges that his "termination was the direct result of his complaints about his working conditions and truck assignments," he does not allege that he complained about these conditions, let alone that he complained that these conditions and assignments were based on his race, such that he could connect the alleged prior discrimination with his termination on the basis of race. (Docket Entry No. 6 at ¶ 18). Without these allegations, he has not pleaded facts that could show a connection between his February 9, 2018, termination and the pre-limitations events.

Without alleging facts that could connect and "show an organized scheme leading" from the allegedly discriminatory treatment occurring outside the limitations period to the only alleged employment action within the limitations period—Reed's termination—Reed cannot use the continuing-violation doctrine to sweep in the pre-limitations activity. *Huckabay*, 142 F.3d at 239. With the exception of Reed's Title VII claim for his February 9, 2018 termination, Reed's Title VII claims are time barred. The court dismisses Reed's Title VII claims related to the incidents before

February 9, 2018, without prejudice and with leave to amend if Reed can allege facts that would meet the requirements for showing a continuing violation. Whether Reed has stated a claim on which relief can be granted for his Title VII discrimination and retaliation claim related to his termination is analyzed below.

### B. Whether Reed Has Stated a Claim

### 1. Title VII and § 1981 Retaliation

Brady Trucking argues that the court should dismiss Reed's Title VII and § 1981 claims for retaliation because Reed has not alleged facts supporting the necessary elements of those claims. (Docket Entry No. 12 at 25–26). The Fifth Circuit analyzes § 1981 claims under the same standard as claims under Title VII. *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 356 (5th Cir. 2005). Title VII prohibits employers from discriminating against an employee because the employee "opposed any practice made an unlawful practice" under Title VII , "or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" as defined under Title VII. 42 U.S.C. § 2000e-3. To plead a *prima facie* case of retaliation under Title VII or § 1981, a plaintiff must plead facts showing that: (1) he was engaged in a protected activity; (2) he was subjected to an adverse employment action; and (3) there is a causal link between the activity and adverse action. *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004); *see also Foley v. Univ. of Hous. Sys.*, 324 F.3d 310, 316 (5th Cir. 2003) (the elements of a *prima facie* case under § 1981 are the same for Title VII).

"The plaintiff 'need not prove that [his] protected activity was the sole factor motivating the employer's challenged decision in order to establish the 'causal link' element." *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002) (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996)).

However, a plaintiff must allege facts showing that the decisionmaker was aware of the protected activity; otherwise, there can be no causal connection between the protected activity and any adverse employment action taken by that decisionmaker. *Watts v. Kroger Co.*, 170 F.3d 505, 512 (5th Cir. 1999); *see also Corley v. Jackson Police Dep't*, 639 F.2d 1296, 1300 (5th Cir. 1981) ("[A]n employer cannot be guilty of retaliation for an employee's opposition to discrimination unless he is aware of that opposition.").

Brady Trucking argues that Reed has not alleged facts that could show that he engaged in a protected activity or that his termination resulted from engaging in a protected activity. Reed alleges that he and other African-American drivers received inferior trucks and equipment, but Brady Trucking argues that Reed has made "no assertion that he complained of the condition of his truck or those given to other African American drivers, or that he told [Brady Trucking] that he felt he had been discriminated against because he got a dirty truck." (Docket Entry No. 12 at 26). Brady Trucking also argues that the incidents Reed alleges involving Cowboy, Mouton, and the flat tire do not include any allegation that Reed complained that the incidents occurred because of racial discrimination. (*Id.*). Brady Trucking also argues that the facts Reed alleges about his termination following his personal automobile accident and injury "support that he was terminated for failing to return to work and not due in any manner to his race." (*Id.* at 27). Reed responds that his amended complaint alleges that he "engaged in internal complaints of disparate treatment." (Docket Entry No. 13 at 7).

Reed's amended complaint does not allege facts supporting the assertion that he engaged in a protected activity. A protected activity is "opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation,

proceeding or hearing under Title VII." *Richards v. JRK Property Holdings*, 405 F. App'x 829, 831 (5th Cir. 2010) (quoting *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (quotation marks omitted)). "[A]n employee cannot simply complain that []he received unfair or undesirable treatment." *Carter v. Target Corp.*, 541 F. App'x 413, 418 (5th Cir. 2013). For an internal complaint made to a company to be a protected activity, it must clearly oppose an unlawful Title VII practice. "A vague complaint that does not reference a discriminatory employment practice does not constitute a protected activity." *Id.*

*Moore v. United Parcel Service, Inc.*, 150 F. App'x 315 (5th Cir. 2005), demonstrates this standard. The plaintiff had filed two grievance letters with UPS, challenging the employer's decisions to disqualify him as a driver and issue him intent to suspend and intent to terminate letters. *Id.* at 316. After UPS fired him, he brought a Title VII action, alleging that the company had retaliated against him for the grievance letters, fostered a hostile work environment, and discriminated against him based on his race. *Id.* at 317–19. The district court granted summary judgment to UPS. The Fifth Circuit affirmed. The plaintiff had not made a *prima facie* showing of retaliation because the grievance letters were not a protected activity. The letters "did not oppose or protest racial discrimination or any other unlawful employment practice under Title VII" and "made no mention of race discrimination." *Id.* at 319.

The amended complaint does not allege that Reed complained to Brady Trucking about any racial basis or aspect of the treatment he or other African-American truck drives received. Reed alleges that after Cowboy altered his logbook, "he left a voice message on Mr. Mouton's mobile phone with a callback request to discuss what happened." (Docket Entry No. 6 at ¶ 13). When Mouton and Reed spoke, Reed said that he "was concerned about this happening again and

explained that he wanted to make sure that he was following legal protocols." (*Id.*). The amended complaint does not allege that Reed told Mouton that he believed that his race had played any role in the incident. Reed also alleges that after the flat-tire incident, he "began questioning African American co-workers regarding their work conditions and truck assignments and how they differed from their Caucasian co-workers." (Docket Entry No. 6 at ¶ 15). However, the amended complaint does not allege that Brady Trucking was aware that Reed was gathering this information. Reed has also not alleged that he complained to any supervisor or manager at Brady Trucking about any racially discriminatory aspect of the trucks assigned, about being required to drive his truck with a flat tire, or about having to drive an extended shift to complete a haul.

Without allegations that Reed engaged in a protected activity or that Brady Trucking was aware of Reed's participation in a protected activity, such as Reed complaining to Brady Trucking about the disparate treatment of African-American drivers, Reed has not alleged facts sufficient to state a Title VIII or § 1981 retaliation claim. The court dismisses these claims, without prejudice and with leave to amend.

### 2. Title VII and § 1981 Racial Discrimination

Brady Trucking argues that Reed cannot maintain his § 1981 claim because Reed did not timely exhaust his administrative remedies and he lacks an underlying Title VII claim. (Docket Entry No. 12 at 28–29). The company argues that "section 1981a does not provide an independent basis for a discrimination or retaliation claim," but only allows for compensatory and punitive damages. (*Id.* at 29). Brady Trucking also argues that Reed's claim fails because his allegations are

conclusory and he does not show that his race was relevant to his termination or his treatment.[3]

Reed responds only that his discrimination claim is supported by "sufficient facts to show that [he] was subjected to discrimination because of his race, that other similarly situated non-minority employees were treated more favorabl[y] than [he was], and that he suffered an adverse employment action." (Docket Entry No. 13 at 9).

Section 1981a establishes the requirements for a plaintiff's right to recover damages in a civil rights action. *See* 42 U.S.C. § 1981a. The amended complaint is clear that Count 5 is made "[p]ursuant to 42 U.S.C. § 1981," which provides a cause of action. Section 1981 states that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishments, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981. Section 1981 prohibits both public and private discrimination in the making and enforcement of contracts. *See Olmestead v. Zimring*, 527 U.S. 581, 617 n.1 (1999).

To state an intentional discrimination claim, a plaintiff must allege that a defendant's interference with a right or benefit to which he was legally entitled was racially motivated. *Green v. State Bar of Texas*, 27 F.3d 1083, 1086 (5th Cir. 1994). The plaintiff can use either direct or circumstantial evidence to demonstrate that necessary intent. *See Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 384, 390 (1982); *Portis v. First Nat'l Bank of New Albany*, 34 F.3d 325,

---

[3] Brady Trucking also argues that because the Title VII claims are time barred, Reed's claims under § 1981 are also time barred. (Docket Entry No. 12 at 29). However, § 1981 claims are not subject to the same administrative exhaustion requirements as Title VII. Section 1981 claims are instead subject to the 28 U.S.C. § 1658 statute of limitations that provides "a civil action arising under an Act of Congress" may not be commenced later than four years after the cause of action accrues. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004).

328 (5th Cir. 1994). If, as here, a plaintiff relies only on circumstantial evidence, the claim is examined under the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The plaintiff must first make a *prima facie* showing of discrimination. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007). "A prima facie case may be established by a showing that the plaintiff was a member of an identifiable [protected class]; that he was qualified for the benefit or promotion he sought; that he was denied these benefits and such denial constitutes an adverse employment decision; and that the adverse employment decision was differentially applied to plaintiff." *Rubinstein v. Adm'rs of Tulane Educ. Fund*, 218 F.3d 392, 399 (5th Cir. 2000).

However, a plaintiff need not make a *prima facie* showing to survive a Rule 12(b)(6) motion to dismiss. *See, e.g.*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–12 (2002); *Raj v. La. State Univ.*, 714 F.3d 322, 330 (5th Cir. 2013). While "the prima facie elements are not entirely irrelevant," the standard is whether the facts alleged are "sufficient to at least create an inference that the plaintiff was discriminated against due to his race." *Wesley v. Scobee Foods, Inc.*, No. 12-1836, 2013 WL 3324092, at *4 n.6 (N.D. Tex. June 28, 2013).

Reed has not met his burden to state a claim under § 1981. He alleges that he is a member of a protected class and that Brady Trucking interfered with his employment through his termination. (*See* Docket Entry No. 6 at ¶¶ 9–10, 17–18). He also alleges that he was denied the benefits of his employment, asserting that African-American drivers were given inferior equipment and vehicles and that he received different treatment than that of nonminority employees when making service requests. (*Id.* at ¶¶ 11–14). However, he has not alleged that the relevant comparators—Caucasian sand haulers—"had the same job duties, shared the same supervisors, or had their employment status

19

determined by the same individual." *Wesley*, 2013 WL at *5 (citing *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009); *Dotson v. Gulf*, No. H-05-0106, 2006 WL 44071, at *7 (S.D. Tex. Jan. 9, 2006)).

To state a claim, Reed must allege facts showing that these similarly situated employees outside his protected class were not only treated more favorably, but also that they were treated more favorable in *nearly identical circumstances. Okoye*, 245 F.3d at 512. Reed has not alleged that similarly situated employees outside his protected class received different treatment when making service requests for flat tires or when working long hauls. While he alleges that African-American drivers had inferior trucks and more dangerous working conditions, he alleges only the working conditions that he faced without a comparison to the working conditions he saw Caucasian drivers experience. His allegations about the quality of equipment, while stating that Caucasian drivers had superior equipment, do not include allegations that make clear the Caucasian drivers had the same employment status and job duties as Reed and other African-American drivers.

Reed has drawn conclusory comparisons to coworkers outside his protected class with respect to the equipment and working conditions for Caucasian and African-American drivers. (*See* Docket Entry No. 6 at ¶¶ 11–12). But without alleging facts showing that the drivers were similarly situated or showing how the working conditions for similarly situated Caucasian employees were superior, Reed's amended complaint cannot create an inference that he was discriminated against based on his race.

To the extent that Reed's Title VII discrimination claim survives as focused only on his February 9, 2019, termination, he has also failed to allege facts about that incident that could support an inference that he was discriminated against based on his race. "The ultimate question in a Title

VII discrimination case is 'whether a defendant took an adverse employment action against a plaintiff *because of* [his] protected status.'" *Whitlock v. Lazer Spot, Inc.*, 657 F. App'x 284, 286 (5th Cir. 2016) (quoting *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013)).  Reed alleges that he was terminated "on the basis of his race" after he took time to seek medical treatment for his back injury.  He alleges that Brady Trucking's purported reason for his termination was pretextual, and the company's actual reason was that he had made complaints about the different treatment that he and other African-American drivers received from the company based on their race.  As discussed above, Reed has not alleged facts that could show he made these complaints to Brady Trucking.  He he does not allege other facts, such as comments by supervisors about his race, that could show Brady Trucking was motivated to fire Reed based on his race.  Without such allegations, he has not stated a Title VII discrimination claim for his February 9 termination. *See Raj*, 714 F.3d at 331 ("Raj's complaint repeatedly avers that LSU's actions were 'pretextually' premised on his failure to obtain grant funding, but he does not allege any facts that link the alleged harassment with his race or national origin.  As Raj has not alleged any connection between his race and national origin and the harassment alleged in the complaint, he has not pled a claim of hostile work environment that raises his right to relief 'above the speculative level.'").

Because Reed has not alleged facts that could support an inference that Brady Trucking discriminated against him based on his race, the court dismisses Reed's discrimination claims under § 1981 and Title VII, without prejudice and with leave to amend.

**IV.    Conclusion**

The court grants Brady Trucking's motion to dismiss, without prejudice and with leave to amend.  (Docket Entry No. 12).  Reed must file an amended complaint by **May 3, 2019.**  The initial

pretrial and scheduling conference set for April 2, 2019 is reset to **May 29, 2019, at 2:30 p.m.**

SIGNED on March 18, 2019, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge